**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 0 4 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DISCOVER GROUP, INC.,

Plaintiff,

- against –

SUPPLIES NETWORK, INC., and
"JOHN DOES" 1-10, the names of these
companies or individuals being fictitious
and whose identities are presently unknown
to the plaintiff,

Defendants.

---

Civil Action File
No.

CV 10 - _____ 0002

COMPLAINT AND
JURY DEMAND

TRAGER, J.

CARTER, M.J.

Plaintiff, Discover Group, Inc. ("DGI"), by and through its attorney, Solomon E. Antar, Esq., as and for its cause of action against the above-named Defendants, states and alleges as follows:

## NATURE OF THE CASE

1.     This action is brought by DGI, a distributor and reseller of various brands of printer ink cartridges and imaging products, against SUPPLIES NETWORK, INC., and "JOHN DOES" 1-10, the Defendants, as distributors and suppliers of competing and accessory products, for money damages, including treble damages, and injunctive relief, violations of Section 1 of the Sherman Act and Section 2 of the Robinson-Patman Act, *15 U.S.C. §§ 1* and *13*, respectively, and the New York Anti-Trust Act, GBL *§340,* and the Deceptive Practices Act, GBL *§ 349* .

1

2.     As more fully averred below, the Defendants in this action, SUPPLIES NETWORK, INC., and "JOHN DOES" 1-10, contracted, combined, and conspired to use their collective market power to gain agreements or understandings with the Defendant SUPPLIES NETWORK, INC. to refuse to sell to DGI various ink cartridge printer and imaging products and related materials necessary for the competitive sale of said products in the New York  geographic area and national markets, and/or to sell at unreasonably high and economically unfeasible prices such products and materials. As a result, DGI has for some time been unable to effectively distribute the aforesaid  products in  New York and other markets and has suffered substantial injury to its business.

## JURISDICTION AND VENUE

3.     Plaintiff brings this action pursuant to Sections 4(a) and 16 of the Clayton Act *(15 U.S.C. §§ 15*(a) and 26, respectively) to recover damages and costs of suit, including reasonable attorneys' fees, for price discrimination resulting from  Defendants' violations of Section 1 of the Sherman Act and Section 2 of the Robinson-Patman Act.

4.     Subject matter jurisdiction is proper in this Court pursuant to *28 U.S.C. §§ 1331* and 1337 as this action involves a federal question arising under Sections 4 and 16 of the Clayton Act, *15 U.S.C. §§ 15* and 26, respectively, and pendent and/or ancillary state law claims arising out of a common nucleus of operative fact.

2

5.    Personal jurisdiction over all Defendants comports with the United States Constitution.

6.    Venue is proper in this Court pursuant to Sections 4(a) and 12 of the Clayton Act *(15 U.S.C. §§ 15*(a) and 22, respectively) and *28 U.S.C. § 1391* because at all relevant times Defendants resided, transacted business, were found or had agents in the State of New York, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below was carried out, in the State of New York, all of said parties being subject to the longarm jurisdiction of this state pursuant to the provisions of Section 302 of the New York Civil Practice Law and Rules.

## PARTIES

7.    DGI is a registered New York corporation, in good standing, and a distributor and reseller of printer ink cartridges, imaging, and other related products on a wholesale basis to the trade in the New York and national markets throughout the United States, and to state and local governmental entities with a principal place of business located at 2741 West 23rd Street, Brooklyn, N.Y. 11224.

8.    The Defendant, SUPPLIES NETWORK, INC,  is a registered corporation in the State of Missouri transacting business in the State of New York and a distributor of printer ink cartridges, imaging, and other related products at a wholesale basis to the trade in the New York market and in markets throughout the United States, with various office locations in the

3

United States.

## CO-CONSPIRATORS

9.    Upon information and belief, various other persons, firms or
entities, named as "JOHN DOES" 1-10 in this action, who compete with
DGI (or "Favored Purchasers") have participated as co-conspirators with
Defendant SUPPLIES NETWORK, INC. in the offenses alleged in this
Complaint and have performed acts and made statements in furtherance
thereof. Evidence of the identity of co-conspirators is in the possession of
Defendant. When knowledge of such co-conspirators becomes known to
DGI, it will amend this Complaint to add such individuals or entities as
named Defendants as the case may be.

## INTERSTATE TRADE AND COMMERCE

10.    At all relevant times to this action, the activities of Defendants,
as described herein, occurred within interstate commerce; had, and continue
to have, a substantial effect on interstate commerce; and have unreasonably
restrained, and continue to restrain, interstate trade and commerce.

## GENERAL ALLEGATIONS

11.    DGI is a distributor of various brands of ink cartrige printer and
imaging products, both on an interstate and national basis to the trade and
others.

4

12.   Heretofore,   Defendant   SUPPLIES   NETWORK,   INC, established an account on behalf of DGI as a distributor and reseller of ink printer cartridge and imaging products, the same having been acknowledged by said Defendant in emails exchanged between the parties.

13.   During the period from March, 2009 to the present date, DGI ordered various products from SUPPLIES NETWEORK, INC. at prices establissed by the Defendant.

13.   In order to successfully resell the  subject products of any given brand as purchased from the Defendant, pricing is a paramount factor due to ongoing competition  in the industry.

14.   However, notwithstanding the fact that Plaintiff had established an account with the Defendant, as Plaintiff  began to increase its purchases, Defendant, in turn, began to limit the amount of goods sold as more particularly described  on Exhibit A attached hereto.

15.   In fact, Defendant was not only taking steps to limit Plaintiff's purchases, but it was, in effect, attempting to cut it out from making further purchases or from altogether obtaining any goods at all.

16.   In discussions between Israel Blackman, the principal officer of DGI, with the account representative of the Defendant, the latter confirmed that no further sales would be made by Defendant to DGI, or, instead, that very limited sales would be made at higher prices due to the fact that DGI was competing with SN's Favored Purchasers.

5

17.     In increasing DGI's pricing of the goods sold by SN, and/or by intentionally limiting DGI's supply, SN is deliberately manipulating the market and the prices of the subject products, not only in its favor but also to benefit of its Favored Purchasers in order to maintain artificially high prices for the products sold.

## INSTANCES OF DEFENDANTS' ILLEGAL AND COLLUSIVE CONDUCT

18.     In response to a recent inquiry and complaint made by Israel Blackman to Tim Harper, Defendant's representative, as to the reason why DGI's pricing was higher that those charged to SN's Favored Purchasers, the response was unequivocal.  Defendant indicated that the increase was so as not to foster, but to effectively hinder, any competition; and, that SN would sell goods to DGI, but only at higher prices than to its Favored Purchasers -

> *"Israel,*
>
> *SN is not interested in providing you a competitive price on supplies because the product ends up back to our customer base which is the independent reseller. We support the IR with price, distribution and tools to assist them in growing their business. We'll sell you products but we're not pursuing your business."*

6

19.    That, as a result of the foregoing, Defendant intentionally created and further fostered a deliberate price differential between that which was or could be sold to DGI, and the prices charged to others, including its Favored Purchasers.

20.    That the effect of Defendant's scheme to manipulate the prices of the subject products was and still is to keep the pricing of said products at artificially high levels in order to intentionally inhibit competition in the printer ink cartridge industry.

21.    As a result of Defendants' illegal and collusive conduct, DGI has chiefly been able to secure only limited quantities of products from other suppliers at higher prices than originally obtained from the Defendant.

22.    By virtue of the forgoing, SN has discriminated in price as between the Plaintiff and other dealers who compete with DGI (the Favored Purchasers).

23.    On information and belief, SN continues to engage in the discriminatory pricing outlined above.

24.    At all times relevant hereto, DGI has engaged in actual competition with the Favored Purchasers as of the time of the price differential in that both DGI and the Favored Purchasers competed at the same functional level and within the same geographic market, and at many times for the same contracts with end users.

25. The products sold at discriminatory prices to DGI and the Favored Purchasers were all of the same grade and quality.

26. On information and belief, SN has engaged in substantial price discrimination between DGI and the Favored Purchasers over an approximate period of at least the past year.

27. By virtue of the acts alleged herein, SN's price discrimination is substantially likely to lessen competition or, in the alternative, to injure, destroy, or prevent competition in the marketplace.

## FIRST CAUSE OF ACTION
## Violations of the Sherman Act

28. DGI realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs 1 through 35, inclusive.

29. Collectively, the Defendants hold a dominant position in the New York market and surrounding regions sufficient to gain agreements or understandings with other suppliers to restrict access to the subject products herein described and actually restrict competition.

30. The Defendant has contracted, combined, and/or conspired to use its collective market power to gain agreements or understandings with its Favored Purchasers to the disadvantage of DGI by either directly or indirectly inhibiting the sales of said products and limiting competition amongst the resellers thereof.

8

31.    The purpose and effect of the Defendant agreements, pricing and/or understandings with its Favored Purchasers has been to illegally restrict competition in the sale of products in the New York and national markets.

32.    By engaging in the illegal and collusive activities described herein, Defendant has unreasonably restrained competition in the following ways, among others:

a. Competition among distributors of the subject products;

b. Retail price competition has been restrained and limited more than it would have been absent Defendants' conduct;

c. Costs of entry into the marketplace has been significantly increased, which has impeded the growth of brand selection and distribution efficiencies; and

d. Information that would enable consumers to make informed price and product comparisons between competing products has been suppressed.

33.    By engaging in the illegal and collusive activities described herein, Defendants have burdened, and continue to burden, competition among distributors of like products without advancing any laudable or legitimate public interest.

34.    By engaging in the illegal and collusive activities described herein, Defendants have placed, and continue to place, a burden on interstate commerce, as evidenced among suppliers, distributors, and purchases of like

products throughout the New York market, and surrounding geographic regions.

35.   By engaging in the illegal and collusive activities described herein, Defendants are engaged in a wrongful violation under Section 1 of the Sherman Anti-Trust Act.

36.   As a direct result of Defendants' violations of the Sherman Act, DGI has suffered substantial loss and damage to its trade and business, in an amount to be proven at trial, and is entitled to recover treble damages and costs of suit, including reasonable attorneys' fees pursuant to Section 4(a) of the Clayton Act, *15 U.S.C. § 15*(a).

37.   As a direct result of Defendants' violations of the Sherman Act, DGI has suffered, and continues to suffer, irreparable harm to its trade and business for which monetary damages would not be curative, and is entitled injunctive relief and costs of suit, including reasonable attorneys' fees, pursuant to Section 16 of the Clayton Act, *15*

## SECOND CAUSE OF ACTION
### Violations of the Robinson-Patman Act

38.   DGI realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs 1 through 45, inclusive.

39.   The Defendants engaged in the business of supplying distributors in the New York and national market for the sale and

distribution of the subject products herein described.

40.    DGI has been effectively precluded from competing in the sales of such products in the New York and national markets by the

41.    Defendants' discriminatory pricing practices in refusing DGI terms and pricing for product of like grade and quality comparable to those enjoyed by competing distributors and its Favored Purchasers of such products and only on terms and pricing that are financially onerous and unsupportable by the New York and national markets.

42.    The Defendants, in the course of engaging in interstate commerce, have knowingly induced and received the benefit of the Defendants' discriminatory pricing practices by receiving terms and pricing for products of like grade and quality which are more advantageous and superior to those offered DGI.

43.    By engaging in the illegal and collusive discriminatory pricing practices described herein, Defendants are engaged in violations of Section 2 of the Robinson-Patman Act, *15 U.S.C. § 13.*

44.    As a direct result of Defendants' violations of the Robinson-Patman Act, DGI has suffered substantial loss and damage to its trade and business, in an amount to be proven at trial, and is entitled to recover treble damages and costs of suit, including reasonable attorneys' fees pursuant to Section 4(a) of the Clayton Act, *15 U.S.C. § 15(a).*

45.    As a direct result of Defendants' violations of the Robinson-Patman Act, DGI has suffered, and continues to suffer, irreparable harm to its trade and business for which monetary damages would not be curative, and is entitled injunctive relief and costs of suit, including reasonable attorneys' fees, pursuant to Section 16 of the Clayton Act, *15 U.S.C. § 26.*

### THIRD CAUSE OF ACTION

#### Violations of the Donnley Act
#### New York General Business Law §340

46.    DGI realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs 1 through 46, inclusive. Collectively, the Defendants hold a dominant position in the market sufficient to gain agreements or understandings with the Favored Purchasers to restrict access to elements essential to the sale of the subject products in the marketplace and to actually restrict competition.

47.    The Defendant SN has contracted, combined or conspired to use its collective market power to gain agreements or understandings with the Favored Purchasers to disadvantage their competitors, namely DGI, by either directly persuading or coercing said customers to maintain an artificially high price for the goods in order to restrict or eliminate DGI's access to the subject products essential for the competitive sale of ink cartridge products in the prevailing market.

48.    The purpose and effect of the Defendants' agreements or understandings with the Favored Purchasers has been to restrict competition

12

in the sale of the subject products in the market to the Defendants.
Distributors.

49.     By engaging in the illegal and collusive activities described
herein, Defendants have unreasonably restrained competition in the
following ways, among others:

a. Competition among distributors of the subject products in the
marketplace, including competition among name-brand products, has
been restrained;

b. Retail price competition has been restrained, and product selection
has been more limited in the market  than it would have been absent
Defendants' conduct;

c. Costs of entry into the market have been significantly increased,
which has impeded the growth of product selection and distribution
efficiencies; and

d. Information that would enable consumers to make informed price
and product comparisons between competing products has been
suppressed.

50.     By engaging in the illegal and collusive activities described
herein, Defendants have burdened, and continue to burden, competition
among distributors of the subject product in the market without advancing
any laudable or legitimate public interest.

51. By engaging in the illegal and collusive activities described
herein, Defendants have placed, and continue place, a burden on both the
New York and national markets, as evidenced among suppliers, distributors,

and purchases of the subject products throughout the New York market and surrounding geographic regions.

52.    By engaging in the illegal and collusive activities described herein, Defendants are engaged in violations the New York Antitrust Act, General Business Law §340.

53.    As a direct result of Defendants' violations of the New York Antitrust Act, General Business Law §340. DGI has suffered substantial loss and damage to its trade and business, in an amount to be proven at trial, and is entitled to recover treble damages and costs of suit, including reasonable attorneys' fees pursuant to General Business Law §340, *et seq.* DGI has suffered, and continues to suffer, irreparable harm to its trade and business for which monetary damages would not be curative, and is entitled injunctive relief pursuant to New York General Business Law §340, *et seq.*

## FOURTH CAUSE OF ACTION

### Violations of the New York Deceptive Practices Act
### New York General Business Law §349

54.    DGI realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs 1 through 53, inclusive.

55. The Defendants are engaged in the business of supplying distributors in the New York and national markets with the subject products as herein referred to.

56.    DGI has been effectively precluded from competing in sales of the subject products in the New York and national markets by the defendants' discriminatory pricing practices in refusing DGI's terms and pricing for product of like grade and quality comparable to those enjoyed by competing Favored Purchasers of products and only on terms and pricing that are financially onerous and unsupportable by the market.

66.    The Defendants, in the course of engaging in commerce in the State of New York and elsewhere, have knowingly induced and received the benefit of the discriminatory pricing practices for the same or products of like grade and quality which are more advantageous and superior to those offered to DGI.

67.    By engaging in the illegal and collusive discriminatory pricing practices described herein, Defendants are engaged in violations of the New York Deceptive Practices Act, GBL, § 349 *et seq.*

68.    As a direct result of Defendants' violations of the New York Deceptive Practices Act, DGI has suffered substantial loss and damage to its trade and business, in an amount to be proven at trial, and is entitled to recover damages and costs of suit pursuant to GBL, § 349 *et seq.*

69.    As a direct result of Defendants' violations of the New York Deceptive Practices Act, DGI has suffered, and continues to suffer, irreparable harm to its trade and business for which monetary damages would not be curative, and is entitled injunctive relief and costs of suit pursuant to GBL, § 349 *et seq.*

## FIFTH CAUSE OF ACTION

### Intentional Interference with Existing and Prospective Economic Relations

70.     DGI    realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs 1 through 69, inclusive.

71.     Defendants have intentionally interfered with DGI 's existing and prospective economic relations by engaging in the illegal and collusive activities described herein and precluding DGI  from competing with the Defendant's Favored Purchasers and others in the sale of the subject products in the New York and national markets.

72.     Defendants' intentional interference with DGI 's existing and prospective economic relations was done for an improper purpose and by improper means because Defendants' actions are intentionally designed to preclude DGI from obtaining products necessary for the sale and distribution in the New York and national markets.

73.     As a direct result of Defendants' intentional interference with DGI' existing and prospective economic relations, DGI has sustained damages in an amount to be proven at trial.

16.     As a result of the discriminatory pricing alleged herein, DGI has been damaged as follows:

A.    Losses of gross profit margin incurred on sales actually made, in which the goods were purchased at a higher price than the Favored Purchasers;

B.    Losses of gross profit margin incurred on bids DGI made to end users, but which DGI did not receive.

C.    Losses of gross profit margin incurred on sales of other goods and services to present or former customers of the Plaintiff who were, instead, compelled to buy, in whole or in part, from one or more of the Defendants; and

D.    Other losses suffered as a consequence of the unlawful price discrimination, including increased (above-normal) inventory costs, reduced (below-normal) inventory turnover, higher interest expenses and other increased operating costs.

17.    DGI has been damaged in an amount not presently known, but to be proven at trial.

18.    DGI is entitled to an award of attorneys' fees.

19.    DGI is entitled to a preliminary and permanent injunction prohibiting the Defendants from continued violations of Section 2(a) of the Robinson-Patman Act.

WHEREFORE, DGI hereby prays as follows:

1.    On Plaintiff's First Cause of Action, that the complained contract, combination or conspiracy and the acts done in the furtherance

17

thereof by Defendants be adjudged to be in violation of Section 1 of the Sherman Act, *15 U.S.C. § 1;* that Defendants be held jointly and severally liable therefor; and that DGI recover damages in an amount to be trebled as provided by law.

2.      On Plaintiff's Section Cause of Action, that the complained discriminatory pricing practices engaged, induced, and received by Defendants be adjudged to be in violation of Section 2 of the Robinson-Patman Act, *15 U.S.C. § 13;* that Defendants be held jointly and severally liable therefor; and that DGI recover damages in an amount
to be trebled as provided by law.

3.      On Plaintiff's Third Cause of Action, that the complained contract, combination or conspiracy and the acts done in the furtherance thereof by Defendants be adjudged to be in violation of the New York Antitrust Act; that Defendants be held jointly and severally liable therefor; and that DGI recover damages as provided by law.

4.      On Plaintiff's Fourth Cause of Action, that the complained discriminatory pricing practices engaged, induced, and received by Defendants be adjudged to be in violation of the New York Deceptive Practices Act; that Defendants be held jointly and severally liable therefor; and that DGI recover damages as provided by law.

5.      On Plaintiff's Fifth Cause of Action, that the complained actions of Defendants be adjudged to be intentional and with purpose of tortiously interfering with DGI's existing and prospective economic

relations; that Defendants be held jointly and severally liable therefor; and that DGI recover damages as provided by law.

6.     Injunctive relief as provided by law.

7.     Attorney fees and costs of suit.

8.     Punitive damages.

9.     For such other and further relief as the Court determines to be just and proper.

## JURY DEMAND

DGI hereby requests the matter be tried to a jury and submits the statutory fee for the same.

Dated,  Brooklyn, N.Y.
        December 28, 2009

SOLOMON E. ANTAR (SEA-7804)
Attorney for Plaintiff
Office & P.O. Address
42 Falmouth Street
Brooklyn, N.Y. 11235-3002
Tel. 718-769-3200

19